## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIM SEGEBARTH and SUSAN STONE,** | : | |
| **individually and on behalf of all others** | : | |
| **similarly situated,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 19-5500** |
| | : | |
| **CERTAINTEED LLC,** | : | |
| **Defendant.** | : | |

## O R D E R

On November 21, 2019, Plaintiff Kim Segebarth brought claims on behalf of a nationwide class of building owners who had Defendant CertainTeed LLC's Shingles installed between 1995 and 2010 that are covered by the company's limited warranties. Plaintiffs alleged that the Shingles were defective, that they failed before the expiration of the limited warranty, and that Plaintiffs have suffered resulting damage. (Compl., Doc. No. 1, Am. Compl., Doc. No. 25.) On August 2, 2022, I conditionally certified a Settlement Class and preliminarily approved the Parties' Settlement Agreement. (Doc. No. 53.) Plaintiffs now ask me finally to certify the Settlement Class, certify: Kathryn Eloff, Esq., as Personal Representative of the Estate of Kim Segebarth and Susan Stone as Class Representatives of the Settlement Class; and Audet & partners, LLP, Levin, Sedran & Berman, and Cuneo Gilbert & LaDuca, LLP as Class Counsel. Plaintiffs also ask me to approve the Class Notice, grant final approval of the Settlement Agreement, and approve attorneys' fees and expenses and incentive awards. (Doc. Nos. 58, 73.) Because I conclude that: (1) the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3); (2) Notice was sufficient; (3) the terms of the Settlement are fair, reasonable, and adequate; and (4) the requested costs, fees, and awards are reasonable, I will grant Plaintiffs' Motions.

## I.    BACKGROUND

As alleged, in 2008, Mr. Segebarth and Ms. Stone both purchased newly constructed homes in Cutters Creek, a planned unit development in South Euclid, Ohio.  (Am. Compl. ¶¶ 4, 16.)  In 2017, they each received a letter from Cutters Creek's developer informing them that a homeowner in the development recently had to replace his roof after discovering that the shingles on his roof had loose granules and were cracking.  (Am. Compl. ¶ 5.)  The letter further stated that Segebarth and Stone's roofs were constructed with the same CertainTeed Horizon Shingles.  (Id.)  Segebarth and Stone believed that the developer then submitted a warranty claim on behalf of the affected homeowners.  (Id. at ¶¶ 6, 18.)

When Segebarth did not receive updates about the warranty claim, he contacted CertainTeed himself.  (Id. at ¶ 7-8.)  He also consulted two private roofing inspectors, both of whom recommended he replace his roof.  (Id. at 9.)  Based on Segebarth's inquiry, CertainTeed opened a warranty claim for the affected Cutters Creek homes.  (Id. at ¶ 8.)  CertainTeed inspected Segebarth's roof and concluded that the Horizon Shingles exhibited some "overlay" wear but that the shingles' waterproofing function was not compromised, nor was the roof's integrity.  (Id. at ¶ 11.)  CertainTeed denied Segebarth's warranty claim.  (Id.)  Stone was similarly notified that CertainTeed had inspected the worn shingles on her roof and concluded that the Horizon Shingles demonstrated only overlay wear.  (Id. at ¶ 20.)  CertainTeed thus denied Stone's claim.  (Id.)  CertainTeed nonetheless offered Segebarth and Stone similar settlement options Plaintiffs later deemed unacceptable.  (Id. at ¶¶ 12, 21.)

Plaintiffs brought the following national class claims:

- Count 1: CertainTeed breached Horizon Shingles express warranties by "failing to provide customers with a product that would perform the basic intended and essential functions of

shingle products for the specified warranty period." (Am. Compl. at ¶¶ 74-81);

- Count 2: CertainTeed breached the implied warranty of merchantability because the Horizon Shingles "were not of merchantable quality or fit for their ordinary and intended use." (Id. at ¶¶ 82-87);

- Count 3: CertainTeed negligently designed, manufactured, and marketed the Horizon Shingles. (Id. at ¶¶ 88-94);

- Count 4: CertainTeed was unjustly enriched by its "wrongful conduct." (Id. ¶¶ 95-99);

- Count 5: CertainTeed "knowingly, fraudulently and actively misrepresented, omitted and concealed from consumers material facts relating to the quality of" the Horizon Shingles and their "warranty process." (Id. at ¶¶ 100-106);

- Count 6: CertainTeed negligently "misrepresented, omitted and concealed from consumers material facts relating to the quality of" Horizon Shingles. (Id. at 107-113);

- Count 7 (brought on behalf of the Amended Complaint's proposed Ohio subclass only): CertainTeed engaged in deceptive business practices in violation of Ohio's Consumer Sales Practices Act. (Id. at ¶¶ 114-125);

- Count 8 (brought as to the named Plaintiffs only): CertainTeed engaged in deceptive business practices in violation of Ohio's Deceptive Trade Practices Act. (Id. at ¶¶ 126-131.)

- Count 9 (brought on behalf of the Amended Complaint's proposed Ohio subclass only): CertainTeed violated Ohio's Consumer Sales Practices Act by designing and marketing shingles with a dangerous defect. (Id. at ¶¶ 132-137); and

- Count 10 (brought on behalf of the nationwide class and the Amended Complaint's proposed Pennsylvania subclass): CertainTeed engaged in unfair methods of competition

in violation of Pennsylvania's Unfair Trade Practices Consumer Protection Law. Plaintiffs seek "economic and compensatory damages," "restitution," "punitive damages," "injunctive and declaratory relief," "reasonable attorneys' fees and reimbursement of all costs," and "such other and further relief as this Court deems just and appropriate." (Id. at 150-155.)

### A. Procedural Background

Segebarth initiated this class action on November 21, 2019. (Compl., Doc. No. 1.) Stone subsequently joined as a second named Plaintiff, and Eloff, as Personal Representative of Segebarth's Estate, replaced Segebarth following his death. (Doc. Nos. 25, 28, 29.)

While the Parties engaged in discovery, they engaged in Settlement negotiations conducted by former Magistrate Judge Diane Welsh. (Doc. No. 73-1 at 5.) Following a mediation session before Judge Welsh on March 24, 2021, the Parties continued to work through her to reach the agreed-on material Settlement terms. (Id. at 5–6.) After agreement on all the material terms was reached, with the assistance of Judge Welsh the Parties reached an agreement whereby Defendant would not oppose Plaintiffs' requested attorneys' fees, costs, and incentive awards. (Id. at 6.) On July 8, 2021, the Parties filed a stipulation to toll Defendant's time to answer Plaintiffs' Amended Complaint, as they had reached a settlement agreement in principle. (Doc. Nos. 26, 27.)

On November 24, 2021, Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement. (Doc. No. 31.) On August 2, 2022, after a preliminary approval hearing (Doc. Nos. 40, 41), and after the Parties made changes to the proposed settlement and submitted additional briefing to address concerns I had raised at the hearing (Doc. Nos. 39, 44–48), I conditionally certified the Settlement Class under Rule 23(a) and 23(b)(3), appointed Class Representatives and Class Counsel, granted preliminary approval of the Settlement Agreement, and appointed CertainTeed LLC as the Claims Administrator. (Doc. No. 53 at 15–16.) On August

18, 2022, I granted the Parties' joint Motion to modify the Preliminary Approval Order (Doc. No. 53), and provided a date by which the Parties had to file an Amended Settlement Agreement and provide notice under the Class Action Fairness Act, 28 U.S.C. § 1715(b).  (Doc. No. 46.)

On September 2, 2022, Plaintiffs filed an Amended Class Action Settlement Agreement. (Doc. No. 57.)  On November 22, 2022—the last day of the Class period for objections—a group of Insurers filed Motions to Intervene as well as Objections to the Proposed Class Action Settlement.  (Doc. Nos. 59, 60, 61, 62, 64, 65.)  I denied the Insurers' Motions and dismissed their Objections as moot.  (Doc. No. 75.)

Plaintiffs now move for final approval of the Settlement Agreement and for approval of attorneys' fees, expenses, and service awards.  (Doc. Nos. 58, 73.)  I conducted a final approval hearing on December 22, 2022.  (Doc. No. 76.)

## II.     DISCUSSION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members."  In re Aetna Inc., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig. (GM Truck), 55 F.3d 768, 784 (3d Cir. 1995)).

### A. Settlement Class Certification: Rule 23 Analysis

On August 2, 2022, I conditionally certified the following Settlement Class under Rule 23(b)(3) as to all Counts:

All individuals or entities that own a building in the United States on which CertainTeed Fiberglass Horizon Shingles, excluding Horizon Organic Shingles, were installed between 1995 and 2010 that are eligible for relief under the Limited Warranty applicable to the Shingles installed on their building.

Excluded from the Class are all individuals and entities that timely opt out of this Settlement under Federal Rule of Civil Procedure 23; all persons who were or are builders, developers, contractors, installers, wholesalers, or retailers except when the Shingles are installed on their personal residence or commercial building; CertainTeed employees; and myself and any member of my immediate family.

(Doc. No. 53 at 1.)

No Class Member has objected to class certification. For the reasons that follow, and solely for the purpose of settlement (in accordance with the Settlement Agreement), I will now finally certify the Settlement Class.

### Rule 23(a) Requirements

The Settlement Class meets all four Rule 23(a) requirements: "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." In re Corel Corp. Inc. Secs. Litig., 206 F.R.D. 533, 539 (E.D. Pa. 2002); Fed. R. Civ. P. 23(a).

First, as revealed during discovery, there are approximately 600,000 buildings throughout the United States with Shingles that are the subject of this Settlement Class, rendering the Class so numerous that joinder of all its members is impracticable. (Doc. No. 73-1 at 1, 34; Joint Declaration of Charles E. Schaffer, Charles J. LaDuca and Michael McShane in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award of Service Awards (Joint Decl.) ¶ 35, Doc. No. 58-2; Final Approval Hrg. Tr. 18:18–22, December 22, 2022, Doc. No. 77.); Fed. R. Civ. P. 23(a)(1); see also In re Modafinil Antitrust Litig., 837 F.3d 238, 249–50 (3d Cir. 2016) ("'[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met'" (quoting

Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001))).

Second, as I explained in my Preliminary Certification Order, this matter presents at least the following classwide questions of law or fact: (1) whether the Horizon Shingles are defective; (2) whether CertainTeed breached its 25- and 30-year warranties; (3) whether CertainTeed had a duty to disclose the alleged defects; and (4) whether Plaintiffs suffered economic harm due to the defective Horizon Shingles.  (Doc. No. 53 at 6; see also Final Approval Hrg. Tr. 18:23–19:3.); see Fed. R. Civ. P. 23(a)(2); see also In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 399 (3d Cir. 2015) (commonality requirement satisfied where the plaintiffs "alleged that the class was subjected to the same kind of illegal conduct by the same entities, and that class members were harmed in the same way, albeit to potentially different extents").

Third, the claims and defenses of the Class Representatives are typical of the claims of the Class, and their interests align with those of absent Class Members.  Fed. R. Civ. P. 23(a)(3). Defendant's alleged conduct and the Horizon Shingles' premature wear are central to the Class Representatives' and the Proposed Class Members' claims.  See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 598 (3d Cir. 2012) ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992))).

Finally, the Class Representatives and Class Counsel have "fairly and adequately protect[ed] the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  The Class Representatives' interests do not conflict with the interests of other Class Members.  See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 441 (E.D. Pa. 2008) (inquiring into "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class"

(citations and quotations omitted)).  Accordingly, I will finally appoint Kathryn Eloff, Esq., as Personal Representative of the Estate of Kim Segebarth and Susan Stone as Class Representatives. In addition, Class Counsel have pursued this lawsuit vigorously and have substantial experience with class actions and products liability litigation, thus satisfying the requirements of Rule 23(g). Fed. R. Civ. P. 23(g).

### *Rule 23(b) Requirements*

As I explained in my Preliminary Certification Order, I will certify the Settlement Class under Rule 23(b)(3).

These claims may be certified under Rule 23(b)(3)(B) because "questions of law or fact common to class members predominate over any questions affecting only individual members," and because "a class action is superior to other available methods for fairly and efficiently adjudicating" this matter.  Fed. R. Civ. P. 23(b)(3).  First, "questions of law or fact common to class members predominate."  Id.  "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  Sullivan v. DB Investments, Inc., 667 F.3d 271, 298 (3d Cir. 2011); see also id. at 297 (explaining that Rule 23(b)(3)'s predominance requirement is more rigorous than Rule 23(a)(2)'s commonality requirement).  Here, the Settlement Class Members' claims are predicated on the single issue of law and fact:  whether CertainTeed's Shingles are defective.  (Doc. No. 53 at 7–8, Doc. No. 73-1 at 38–39); see Yaeger v. Subaru of Am., Inc., No. 1:14-cv-4490, 2016 WL 4541861, at *7 (D.N.J. Aug. 31, 2016) (the existence of a defect, coverage of defect by warranty, and compensation due to class members are common questions that predominate).

Second, a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

If even a fraction of the estimated 600,000 Class Members chose to litigate their claims individually, it could well burden the courts significantly. By contrast, the Settlement provides the Settlement Class Members with a clear process to satisfy their claims. See Good v. Nationwide Credit, Inc., 413 F.R.D. 141, 154 (E.D. Pa. 2016) (quoting Amchem v. Windsor, 521 U.S. 591, 620 (1997) ("When assessing superiority and 'confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.'").

### B. Notice

I must "'determine that notice was appropriate before evaluating'" the Settlement on its merits. Alexander v. Washington Mut., Inc., No. 07-4426, 2012 WL 6021098, at *6 (E.D. Pa. Dec. 4, 2012) (quoting In re Am. Investors Life Ins. Co. Annuity Marketing and Sales Practices Litig., 263 F.R.D. 226, 237 (E.D. Pa. 2009)). There are no objections to the Class Notice or its implementation. Only one Settlement Class Member, Kenneth Durbal, made a valid and timely request for exclusion. (Declaration of Steven Weisbrot of Angeion Group, LLC Regarding Notice Dissemination (Weisbrot Decl.) ¶ 18–19, Ex. H, Doc. No. 73-2.)

On August 2, 2022, I ruled that the proposed Notice of Class Action Settlement satisfied the requirements of Rule 23(e) and due process, and was otherwise fair and reasonable. (Doc. No. 53 at 12–13.) On August 18, I modified the Preliminary Approval Order to provide a date by which the Parties had to file an Amended Settlement Agreement and provide notice under the Class Action Fairness Act. (Doc. No. 56); 28 U.S.C. § 1715(b).

After I preliminarily certified the Class, Notice was distributed in accordance with my Preliminary Approval Order. On September 12, 2022, Settlement Administrator Angeion Group, LLC distributed a Supplemental Class Action Fairness Act Notice to the Attorneys General of all

states and territories, as well as to the Attorney General of the United States. (Weisbrot Decl. ¶ 6.) Defendant provided Angeion with 5,357 records of potential class members and 230 roofing distributor records, for a total of 5,587 records. (Id. ¶ 7.) Beginning on September 23, 2022, Angeion distributed the Notice to all individuals and entities listed in the 5,587 records via first class mail. (Id.) Angeion passed the records through The United States Postal Service National Change of Address database and updated 479 addresses. (Id.) Initially, 737 of the mailed Notices were returned, but Angeion was able to re-mail 581 of those Notices after obtaining updated addresses. (Id. ¶¶ 8–9.) Angeion instituted a digital banner ad campaign, a social media digital campaign, and a paid search campaign on Google. (Id. ¶¶ 10–13.) As of November 23, 2022, the digital banner ad campaign served 7,935,200 ad impressions, the social media campaign served 18,471,730 impressions, and the paid search campaign delivered 36,880 impressions. (Id. ¶¶ 12–13.) The digital media portion of the Notice Program delivered an 81.55% reach with an average frequency of 4.3 times each, which exceeded Angeion's estimated reach and frequency metrics. (Id. ¶¶ 14–15.) Angeion also established a dedicated website and a toll-free phone number for Class Members to call for more information. (Id. ¶¶ 16–17.) The Class Notice adequately informed Class Members of the subject of the lawsuit; the definition of the Class; the terms of the Settlement; Class Counsel's intent to request attorneys' fees, expenses, and service awards for Class Representatives; where to find additional information; and the details of the final fairness hearing, including the time, the place, and how to present objections. (Doc. No. 73-1 at 31–32.)

In these circumstances, I conclude that the Class Notice and distribution of that Notice fully satisfies the requirements of 23(e) and due process. See Lachance v. Harrington, 965 F. Supp. 630, 636 (E.D. Pa. 1997) ("In order to satisfy due process, notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections.'" (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)); <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 536–37 (3d Cir. 2004) (where the parties lacked the contact information of all individuals who purchased the product in issue, a notice plan that did not include direct mail notice was a "reasonable effort" to provide the "best notice practicable under the circumstances").

### C. Fairness, Adequacy, and Reasonableness of Proposed Settlement

I may approve a settlement where, as here, it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Parties have negotiated a claims-made Settlement Agreement which creates a claim process through which Class Members will receive a five-year extension on their Horizon Shingles warranties. (Doc. No. 73-1 at 7–8; Joint Decl. ¶ 38; Doc. No. 57 § 5.2.4.) Each Class Member who submits a claim within the claims period will receive $40 per square of roofing shingles subject to the revised proration schedule as reimbursement for the material cost of the Shingles qualifying under the Agreement. (Doc. No. 73-1 at 7; Joint Decl. ¶ 37; Doc. No. 57 § 5.2.5.) In addition, if qualifying damage exists on greater than 5% of a given roof plane, the claimant will receive compensation for 100% of the Shingles on the roof. (Doc. No. 73-1 at 8, Joint Decl. ¶ 39; Doc. No. 57 § 5.2.2.) Before the Settlement, Class Members' warranties would have limited their claim to only those Shingles which had actually failed. (Doc. No. 73-1 at 8.) The Settlement Agreement further provides that Class Members who received a prior warranty offer, but did not accept that offer, may submit a new claim, and Defendant will pay the eligible claim with the greater of either (1) the original offer, or (2) the amount payable under the terms of the Settlement Agreement. (Doc. No. 73-1 at 8–9; Joint Decl. ¶ 41; Doc. No. 57 § 5.4.) The Settlement Agreement provides for a written claims procedure that includes an appeal process overseen by an independent third party for denied claims. (Doc. No. 73-1 at 1–2; Joint Decl. ¶ 57;

Doc. No. 57 §§ 7, 7.18.)  Plaintiffs estimate that the total value of the settlement available to the class members is $900 million.  (Doc. No. 73-1 at 9; Joint Decl. ¶ 46.)  Using the historical and expected claims rates (10%) for the Shingles, as well as the historical average value attached to the claims that will come in during the seven-year claim period, the estimated actual value of the Settlement to the Class is $99,138,852.  (Doc. No. 73-1 at 9, 12; Joint Decl. ¶¶ 46. 53.)  Plaintiffs also retained valuation expert Kerper and Bowrun to calculate the value of the five-year extended warranty given to each class member.  (Doc. No. 73-1 at 12–13; Final Approval Hrg. Tr. 11:2–15.)  That expert determined that the market value of the five-year extended warranty is $30 per warranty, and that the total value of the extended warranty settlement provision to the Class is $18 million.  (Id.)

In exchange, the Class Members will release and discharge all claims related to this action against Defendant.  (See Doc. No. 57 § 13.); see also Scott v. Bimbo Bakeries USA, Inc., No. 10-3154, 2015 WL 8764491, at *3 (E.D. Pa. Dec. 15, 2015) ("It is settled law within this Circuit that 'a judgment pursuant to a class settlement can bar later claims on the allegations underlying the claims in the settled class action.'" (quoting In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001))).

***Presumption of Fairness***

A proposed class action settlement should be afforded a presumption of fairness if: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. In re Cendant Corp. Litig., 264 F.3d 201, 232 n.18 (3d Cir. 2001); In re CertainTeed Fiber Cement Siding Litig., 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("The presumption of fairness may attach even where a class is certified for settlement purposes only . . . .").  Here, the Settlement is entitled to a

presumption of fairness because: (1) the Settlement Agreement is the result of vigorous, bona fide, arm's length negotiations and formal mediation; (2) the Parties conducted significant merits discovery; (3) Class Counsel and Defense Counsel have demonstrated that they are experienced in litigating building and other products liability class actions; and (4) no Class Member has objected to the Settlement Agreement.

### *Fairness, Adequacy, and Reasonableness Factors*

The Third Circuit has identified nine factors to assist courts in determining whether a class action settlement should be approved as "fair, adequate and reasonable." Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

In re Cendant, 264 F.3d at 232. When appropriate, courts should also consider:

> (10) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (11) the existence and probable outcome of claims by other classes and subclasses; (12) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (13) whether class or subclass members are accorded the right to opt out of the settlement; (14) whether any provisions for attorneys' fees are reasonable; and (15) whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998) (numbers added). Applying these factors, I conclude that the Settlement is fair, adequate, and reasonable.

### *Girsh* Factors

*Factor One: Complexity, Expense, and Likely Duration of Litigation*

This factor supports the Settlement Agreement.  Settlement is favored when "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." Warfarin, 391 F.3d at 536.

Had the Parties not reached a settlement, Plaintiffs argue that continued litigation would have been lengthy and expensive and report that both sides would have incurred additional costs. (Doc. No. 73-1 at 22.)  Plaintiffs also argue that, in the absence of settlement, the Parties would have continued sharply to dispute the issues at hand and that a jury trial, which could turn on questions of proof, would make the outcome uncertain for all Parties.  (Doc. No. 73-1 at 22; see also Final Approval Hrg. Tr. 12:24–13:13.)  Defendants argue that continued litigation would be protracted and exponentially more expensive for the Parties, as they would seek additional Class and expert discovery and brief class certification and summary judgment motions.  (Doc. No. 74 at 5–6.)  Accordingly, the Parties will benefit from the time and resources thus saved.  See In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 437–38 (3d Cir. 2016) as amended (May 2, 2016); Fleisher v. Fiber Composites, LLC, Civ. No. 12-1236, 2014 WL 866441, at *11 (E.D. Pa. Mar. 5, 2014).

*Factor Two: The Reaction of the Class to the Settlement*

As I have discussed, Angeion conducted a paper Notice campaign that successfully distributed Notice to 5,431 of the 5,587 potential Class Members identified through Defendant's records via first class mail.  (Weisbrot Decl. ¶¶ 7–9.)  Angeion launched a digital media ad

campaign featuring banner ads, social media advertisements, and a paid Google search campaign, resulting in a total of 26,443,810 impressions delivered to potential class members.  (Id. ¶¶ 10–13.)  Angeion also established a dedicated website and toll-free phone line.  (Id. ¶¶ 16–17.)  No Class Members have objected to the Settlement Agreement.  (Id. ¶ 19; Doc. No. 73-1 at 23–24; Final Approval Hrg. Tr. 13:14–17.); See Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 212 (E.D. Pa. 2011) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (internal citation omitted)).  In addition, none of the Attorneys General or federal officials who received CAFA Notice of Settlement have sought to object, intervene, or comment on the Settlement.  George v. Acad. Mortg. Corp., 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) (non-objection by CAFA settlement notice recipients weighed in favor of approval).  Accordingly, this factor favors the Settlement.

*Factor Three: The Stage of the Proceedings and the Amount of Completed Discovery*

I must next consider "the degree of case development that class counsel have accomplished prior to settlement," and whether Class Counsel appreciated the merits of Plaintiffs' case before settlement negotiations.  GM Truck, 55 F.3d at 813.  Plaintiffs explain that their Counsel undertook an extensive investigation into the Shingles' failure and issues resulting from that failure.  (Doc. No. 73-1 at 24.)  This process included interviewing Class Members, reviewing Class Members' documents, interviewing builders and installers, inspecting Shingles on buildings across the country, and assembling a team of experts to assist with factual investigation and assessment of the viability and strength of Plaintiffs' claims.  (Id. at 24–25; Joint Decl. ¶¶ 22–23, 25; see also Final Approval Hrg. Tr. 13:18–14:6.)  Plaintiffs also conducted substantial discovery, permitting them fully to investigate the facts supporting Plaintiffs' claims, assess the viability of the alleged defect, liability, and damages theories, and reach a Proposed Settlement.  (Doc. No. 73-1 at 25–

27.)  Accordingly, Class Counsel had "sufficient evidence to conduct meaningful, arms-length negotiations reflecting the relative strengths of the claims."  <u>Mehling v. New York Life Ins. Co.</u>, 248 F.R.D. 455, 460 (E.D. Pa. 2008).  This factor weighs in favor of Settlement.

*Factors Four, Five, and Six: The Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial*

I must next "'survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'"  <u>In re CertainTeed</u>, 303 F.R.D. at 217 (quoting <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 537 (3d Cir. 2004)) (addressing Factors Four through Six together).  In their Motion for Final Approval, Class Counsel acknowledge that Plaintiffs' claims faced credible defenses and risks. (Doc. No. 73-1 at 27–28; <u>see also</u> Final Approval Hrg. 7–20.)  Plaintiffs recognized the defenses that Defendant previewed at or before mediation, including standing, damages, and causation (i.e., shingle installation defenses).  (<u>Id.</u> at 28.)  Plaintiffs also acknowledged the challenges associated with obtaining class certification, briefing motions for summary judgment, and maintaining class certification through trial.  (<u>Id.</u> at 27); <u>see also In re CertainTeed Fiber Cement Siding Litig.</u>, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. . . .  That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").  Accordingly, as the risks respecting class certification, liability, and damages are outweighed by the immediate benefits of the Settlement Agreement, these factors weigh in favor of Settlement.

*Factor Seven: Ability of Defendants to Withstand a Greater Judgment*

Plaintiffs argue that although Defendant might have the financial resources to pay a larger

judgment, the Settlement's benefits and the risks of further litigation do not weigh against approval of Settlement. (Doc. No. 73-1 at 13.) This factor is neutral. Cf. In re Flonase Antitrust Litig., 951 F. Supp. 2d 739, 744–45 (E.D. Pa. 2013) ("I follow my district court colleagues within the Third Circuit who 'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" (quoting Bredbenner v. Liberty Travel, Inc., Civ. No. 09-905 (MF), 2011 WL 1344745, at *15 (D.N.J. Apr. 8, 2011))); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011) ("[T]his factor is most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.").

> *Factors Eight and Nine: Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery and Attendant Risks of Litigation*

These final Girsh Factors are intended to "'evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.'" In re CertainTeed, 303 F.R.D. at 218 (internal quotation omitted). "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement.'" Sullivan, 667 F.3d at 323–24 (quoting Prudential, 148 F.3d at 322). The relief provided by this Settlement Agreement is fair in light of the challenges Plaintiffs would face in continuing the litigation, and Class Members will receive meaningful benefits without having to face these risks. Plaintiffs also argue that this Settlement Agreement is similar to other approved building materials settlements in the benefits it provides and the relief it provides to Class Members. (Doc. No. 73-1 at 29–30 (collecting cases); see also Final Approval Hrg. 15:1–16:1.). I agree. This factor thus weighs in favor of the Settlement.

### _Prudential_ Factors

The Prudential Factors also support the Settlement Agreement: the litigation was sufficiently advanced that Class Counsel could assess the probable outcome of a trial; Class Counsel's requested attorneys' fees are reasonable (as I discuss below); and the Settlement Agreement establishes a structured procedure through which CertainTeed will administer the claims process.

In sum, upon review of the record and settlement documents, and after conducting a final fairness hearing and applying the Girsh and Prudential Factors, I find that the Settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); see also In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d at 444 ("In the end, this settlement was the bargain struck by the parties, negotiating amid the fog of litigation.  If we were drawing up a settlement ourselves, we may want different terms or more compensation . . . . But our role as judges is to review the settlement reached by the parties for its fairness, adequacy, and reasonableness.").

Accordingly, I will grant final approval of the Settlement pursuant to Rule 23(e).

### D. Fairness and Reasonableness of the Requested Attorneys' Fees, Costs, and Service Awards for Class Representatives

Plaintiffs have asked me to approve attorneys' fees of $1,561,071.03, litigation expenses of $113,928.97, and service awards of $7,500 to each Class Representative.  Defendant does not oppose the request, and there are no objections to it.  I must nonetheless scrutinize its reasonableness.  See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 299 (3d Cir. 2005).

### _Attorneys' Fees_

Having appointed Class Counsel in my August 2, 2022 Order, I must now conduct a "thorough judicial review" of Counsel's fee application.  (Doc. No. 58); Gunter v. Ridgewood

Energy Corp., 223 F.3d 190, 192 (3d Cir. 2000) (quoting In re Prudential, 148 F.3d at 333). Plaintiffs have submitted extensive briefing and a supporting declaration with respect to the reasonableness of the award. (See Doc. No. 58-1; Joint Decl.)

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method." In re Prudential, 148 F.3d at 333. I have the discretion to select between the two methods. See William B. Rubenstein, 5 Newberg on Class Actions § 15:98 (5th ed. 2021) ("The Third Circuit gives its district courts discretion as to whether to use a percentage or lodestar method."). Because this is a claims-made settlement, Plaintiffs ask me to evaluate the fee request using the lodestar method. (Doc. No. 58-1 at 35–36.); see, e.g., Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 590 (D.N.J. 2010) (noting that the lodestar method "has appeal where . . . the nature of the settlement evades the price evaluation needed for the percentage of recovery method."), rev'd on other grounds, 681 F.3d 170 (3d Cir. 2012); see also id. at 593 ("[I]f the settlement's value . . . is too uncertain, then the Court must use the lodestar method."). Plaintiffs contend that the lodestar-based fee is reasonable when cross-checked with the percentage-of-recovery method. (Doc. No. 58-1 at 48–49.).

*The Lodestar Method*

I must multiply "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396 F.3d at 305. Here, the lodestar calculation is $2,131,175.01—2,435.30 hours at rates ranging from $500 to $1,250 per hour for attorneys and $110 to $475 per hour for paralegals. (Doc. No. 58-1 at 37–38, 44–45; Joint Decl. ¶¶ 66, 67, 74, 84, 87.); In re Rite Aid, 396 F.3d at 306–07 ("The lodestar . . . calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries

submitted by the attorneys and need not review actual billing records.").  Having reviewed

Counsel's  declaration, I am satisfied that these hourly rates are reasonable given the complexity

of this products liability action and the skill and experience of the attorneys involved.  (Joint Decl.

¶¶ 7–20, 62–89.).; see also In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 886 F. Supp.

445, 477 (E.D. Pa. 1995) ("Similarly, the complex and difficult nature of this class action ERISA

case demands a quality of service for which relatively expensive representation is to be

expected.").   Moreover, the rates are "usual and customary" and reflect Class Counsel's

"experience in the field, [and] the complexity of the matters involved in this litigation."  (Joint

Decl. ¶¶ 76); cf. Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989) ("In determining how

other elements of the attorney's fee are to be calculated, we have consistently looked to the

marketplace as our guide to what is 'reasonable.'"); Amos v. PPG Indus., Inc. No. 2:05-70, 2015

WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) ("In ascertaining the proper community, district

courts may look to national markets, an area of specialization, or any other market they believe is

appropriate to fairly compensate attorneys in individual cases." (internal quotations and citations

omitted)).

When Class Counsel's requested fee ($1,561,071.03) is divided by the lodestar calculation

($2,111,705.75), the lodestar multiplier is 0.73, well within the range of reasonableness.  See In re

Prudential, 148 F.3d at 341 ("multiples ranging from one to four are frequently awarded in

common fund cases when the lodestar method is applied."); Dickerson v. York Int'l Corp., No.

1:15-CV-1105, 2017 WL 3601948 (M.D. Pa. Aug. 22, 2017) ("A negative multiplier reflects that

counsel is requesting only a fraction of the billed fee; negative multipliers thus "favor[ ] approval."

(quoting Altnor v. Preferred Freezer Servs., 197 F. Supp. 3d 746, 767 (E.D. Pa. 2016)) (alteration

in original)).

*Percentage-of-Recovery Cross Check and <u>Gunter</u> Factors*

I will use the percentage-of-recovery method to cross-check the reasonableness of the lodestar-based fee award.  Newberg § 15:92 ("Courts that utilize the lodestar method will ensure the reasonableness of a lodestar award by assessing what percentage of the class's fund the lodestar fee amounts to. . . .  This process is referred to as a 'percentage cross-check.'").  The percentage-of-recovery method compares the amount of attorneys' fees sought to the total size of the fund.  <u>In re Diet Drugs</u>, 582 F.3d 524, 540 (3d Cir. 2009) (citing <u>In re AT & T Corp.</u>, 455 F.3d 160, 164 (3d Cir. 2006)).  In determining whether the requested fee award is reasonable under the percentage-of-recovery approach, I must consider:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups . . . (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

<u>In re Diet Drugs</u>, 582 F.3d 524, 541 (3d Cir. 2009) (citing <u>Gunter</u> 223 F.3d at 195 n.1, and <u>In re Prudential</u>, 148 F.3d at 336–40); <u>see also</u> <u>Gunter</u> 223 F.3d at 195 n.1 ("The factors . . . need not be applied in a formulaic way.  Each case is different, and in certain cases, one factor may outweigh the rest.").

In a claims-made settlement, I may use the settlement benefits made available to the Class, rather than those claimed during the claims process, to calculate the percentage of benefit.  <u>See</u> <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 479–480 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); <u>Landsman & Funk, P.C. v. Skinder-</u>

Strauss Assocs., 639 F. App'x 880 (3d Cir. 2016) ("[T]he Magistrate Judge properly relied on the entire fund as the appropriate benchmark for assessing the size of the fund created and conducting a lodestar check."); GM Truck, 55 F.3d at 821 ("Courts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund." (citing In re Air Crash Disaster at Florida Everglades, 549 F.2d 1006 (5th Cir. 1977)).

Here, the total value of the Settlement available to Class Members is approximately $900 million and the value of the enhanced warranty benefits to be paid out over the seven-year claims period is $99,138,852. (Doc. No. 58-1 at 57; Joint Dec. ¶ 46.; Doc. No. 73-1 at 9–13.) Plaintiffs' $1,561,071.03 fee request is less than one percent of the overall settlement value and 1.6% of the value of the estimated settlement benefits to be paid out over the seven-year claims period. (Doc. No. 58-1 at 48.) These percentages are well below the range for fee awards granted in the Third Circuit. See, e.g., Fulton-Green v. Accolade, Inc., No. CV 18-274, 2019 WL 4677954, at *12 (E.D. Pa. Sept. 24, 2019) (approving 21% fee); Leap v. Yoshida, No. 14-3650, 2015 WL 619908, at *4 (E.D. Pa. Feb. 12, 2015) ("Fee awards in common fund cases generally range from 19% to 45% of the fund."); In re Schering-Plough Corp. Enhance ERISA Litig., No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (finding that a 33.3% fee award was reasonable).

The Gunter factors support the fee award. I will address briefly each factor here, as I have already considered most of these factors in approving the Settlement Agreement.

First, the Settlement confers benefits on each Class Member. As I have discussed, this Settlement is reasonable in light of the potential Class recovery. Second, there are no objections to either the Settlement or the requested attorneys' fees and costs. With respect to the third and fourth factors, Class Counsel skillfully and vigorously prosecuted this complex products liability

matter and have submitted a declaration documenting their experience in similar matters.  (Joint

Decl.)  As I have discussed, Class Counsel conducted substantial investigation and discovery into

Defendants' Shingles and potential claims and defenses and engaged in arm's length negotiations

with the assistance of a capable, independent mediator before the Parties reached this Settlement.

Absent the work of Class Counsel, most Class Members would likely have obtained no recovery.

See In re Linerboard Antitrust Litig., No. MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2,

2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.'").  Fifth,

Class Counsel have litigated this matter on a contingency basis, facing the risk of no payment if

Plaintiffs were unsuccessful.  (Doc. No. 58-1 at 68–69.)  Sixth, as discussed above, Class Counsel

spent a combined 2,435 hours over some three years working on this matter.  (Id. at 71–72.)

Seventh, the $1,561,071.03 award represents less than one percent of the overall settlement value

and 1.6% of the value of settlement benefits to be paid out over the seven-year claims period.  (Id.

at 58, 72–73.)  This requested fee award falls well within the range of reasonableness, and is

consistent with similar building product class action enhanced warranty settlements.  See, e.g., In

re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig., 2:07-md-01817 (E.D. Pa.) (Doc. No.

217) ($21,886,199.97 fee award with a 1.76 multiplier and representing 2.9–3.3% of the total

estimated settlement value in a claims-made settlement providing enhanced warranty benefits);

Ziccarello v. Sanyo Energy, No. 2:19-cv-16623 (D.N.J.) (Doc. Nos. 97, 103) ($1,672,265.03 fee

award with 0.73 negative multiplier and representing 23% of the total estimated settlement value

in in a claims-made settlement providing enhanced warranty benefits); Minor v. Congoleum Corp.,

No. 3:13-cv-07727-JAP-LHG (D.N.J.) (Doc. Nos. 40, 42) ($485,000 fee award with a 0.71

negative multiplier in a in a claims-made settlement providing enhanced warranty benefits).  The

eighth factor is not relevant because there are no other groups.  Ninth, the requested fee is low

relative to the amount Counsel would likely have received had this case been subject to a private contingency fee arrangement. In re CertainTeed, 303 F.R.D. at 224 ("In private contingency cases, lawyers routinely negotiate agreements for between 30% and 40% of the recovery." (internal citation omitted)); In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451, at *7 (same). Finally, I find that the enhanced warranty benefits negotiated under the terms of the Settlement are sufficiently innovative for the tenth factor to support the fee award. (Doc. No. 58-1 at 74–75.)

In these circumstances, I find that Plaintiffs' fee request is reasonable and should be approved.

### Litigation Expenses

Class Counsel have requested reimbursement of $113,928.97 in litigation expenses. Fed. R. Civ. P. 23(h). This request comprises ordinary litigation expenses such as filing fees, research, expert services, mediation charges, and attorney travel. (Joint Decl. ¶¶ 90–93.) I am satisfied that these expenses were reasonably and appropriately incurred in the nearly three years during which Class Counsel prosecuted this action. See, e.g., In re Safety Components, Inc. Secs. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1224-25 (3d Cir. 1995))). Accordingly, I will approve Class Counsel's request for reimbursement of expenses.

### Service Awards for Class Representatives

I have appointed Kathryn Eloff, Esq., as Personal Representative of the Estate of Kim Segebarth and Susan Stone as Class Representatives of the Settlement Class. Each Class Representative now seeks a $7,500 service award, to which there is no objection. "The approval

of contribution or incentive awards is common, especially when the settlement establishes a common fund." In re CertainTeed, 303 F.R.D. at 225 ("'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'" (quoting Sullivan, 667 F.3d at 333 n.65)).

The Class Representatives have expended time and effort on this litigation. They engaged in lengthy fact-gathering interviews with counsel; searched for and produced documents concerning the installation, premature failure, inspections, estimated repair and replacement costs, warranty claims, and communication with builder/developers and Defendant regarding the Shingles; agreed to have their homes inspected and Shingles removed for testing; reviewed major case filings; monitored the progress of the litigation; and approved the Settlement Agreement. (Doc. No. 58-1 at 77–78; Joint Decl. ¶¶ 96–98.)  In these circumstances, the combined $15,000 service award is reasonable and warranted. See Mayer v. Driver Solutions, Inc., No. 10-CV-1939 (JCJ), 2012 WL 3578856, at *5 (E.D. Pa. Aug. 17, 2012) (approving a $15,000 contribution award for class representatives); Bernhard v. TD Bank, N.A., Civil No. 09-4392 (RBK/AMD), 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000)).

In sum, I will approve as reasonable the requests for attorneys' fees, reimbursement of litigation expenses, and service awards.

## III.    CONCLUSION

For these reasons, I will grant Plaintiffs' Motions for Final Approval of Class Action Settlement and Award of Attorneys' Fees, Reimbursement of Expenses, and Award of Service Awards.  (Doc. Nos. 58, 73.)  An appropriate Judgment follows.


**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

January 31, 2023                                    Paul S. Diamond, J.